UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ROBERT TURSI,

                              Plaintiff,                    **MEMORANDUM AND ORDER**
        -against-                                           13-CV-4756 (RRM) (VMS)

UNITED STATES OF AMERICA,

                              Defendant.
----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

On August 22, 2013, plaintiff Robert Tursi ("Plaintiff" or "Tursi") commenced this

action pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680,

seeking to recover for injuries sustained when he fell on August 22, 2011, while entering a

building on the Brooklyn Campus of the Veterans Affairs Harbor Healthcare System (the "VA

Facility").  Currently before the Court is a motion by defendant United States of America (the

"Government") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.  For the reasons set forth below, the Government's motion is denied.

## BACKGROUND

### A.  Undisputed Material Facts

Unless otherwise indicated, the following facts are drawn from Plaintiff's Statement of

Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") (Doc. No. 57) and are not

disputed in Defendant's Response to Plaintiff's Local Rule 56.1 Statement ("Def. 56.1") (Doc.

No. 60).  Around 8:45 a.m. on August 22, 2011, fifty-six-year-old Tursi went to the VA Facility

for a medical appointment.  (Pl. 56.1 at ¶¶ 1–2; Def. 56.1 at ¶¶ 1–2.)  Tursi's wife, Jane Tursi

("Jane"), parked the car after dropping Tursi off at the VA Facility's rear entrance, which had an

automatic sliding glass door.  (Pl. 56.1 at ¶ 3; Def. 56.1 at ¶ 3.)  Tursi alleges that he fell as he

walked across the threshold of that doorway.  (Pl. 56.1 at ¶ 4; Def. 56.1 at ¶ 4.)  Jane did not

witness the fall but arrived on the scene immediately thereafter, and Tursi told her what had

happened.  (Pl. 56.1 at ¶ 6; Def. 56.1 at ¶ 6.)  Jane looked at the entrance, then accompanied

Tursi to his appointment with his doctor, who brought Tursi to the Emergency Room.  (Pl. 56.1

at ¶¶ 5–6; Def. 56.1 at ¶¶ 5–6.)  After he was treated, Tursi reported the accident to the VA

Police, who took a statement, photographed the rear entrance, and prepared a report.  (Pl. 56.1 at

¶ 7; Def. 56.1 at ¶ 7.)  Tursi also took photographs of the rear entrance door, albeit three to four

days after the accident.[1]  (Pl. 56.1 at ¶ 8; Def. 56.1 at ¶ 8.)  According to Tursi, these

photographs show a gap between the door saddle – a metal threshold which runs along the bottom

of the sliding door.

## B. Complaint

Tursi timely filed an administrative claim, which was denied by the Department of

Veterans Affairs on May 29, 2013.  Less than three months later, Tursi filed this action alleging

that "raised flooring – i.e., the metal saddle" created a hazardous and dangerous condition which

caused him to trip and fall.  (Compl. (Doc. No. 1) at ¶ 21.)  Tursi alleges that, as a result of the

VA Facility's negligence, he suffered permanent pain and mental anguish, incurred medical

expenses from knee surgery, and was rendered unable to perform his normal activities and

duties.  (*Id.* at ¶ 24.)  Tursi seeks damages, pre-judgment and post-judgment interest, and costs.

(*Id.* at 5.)

## C. Motion for Summary Judgment

The Government now moves for summary judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure, arguing that Tursi cannot establish two essential elements of his tort

---

[1] A saddle – also called a threshold – runs along the bottom of a doorway and serves to bridge the gap between the
door and the floor or to create a transition between two floor surfaces.

claim.  First, pointing to the portion of Tursi's deposition testimony in which he estimated that

the defect which caused his fall was "an opening [of] maybe a quarter to a half inch,"

(Declaration of AUSA Jolie Apicella in Support of Defendant's Motion ["Apicella Decl."] [Doc.

No. 54-2], Ex. B, at 94), the Government argues that defects of less than one and one-half inches

are generally considered too trivial to present a dangerous condition for which a defendant can

be held liable.  (Memorandum of Law in Support of Defendant's Motion for Summary Judgment

["Government's Memo"] [Doc. No. 53] at 8–9.)  Second, pointing to that portion of Tursi's

deposition testimony in which he admitted that he was not looking down at the time he fell,

(Apicella Decl., Ex. B, at 44, 53), the Government argues that Tursi merely "speculates that . . .

an opening in the saddle caused his fall," and that "speculation alone is insufficient to defeat [a]

motion for summary judgment."  (Government's Memo at 7.)

Tursi opposes the Government's motion, arguing that he has evidence to establish the

elements of a negligence claim.  Tursi principally relies on a transcript of his February 27, 2014,

deposition and an affidavit from his wife, Jane, dated July 1, 2015, which are appended as

Exhibits B and D, respectively, to the Declaration of Hermann P. Gruber in Opposition to

Defendant's Motion for Summary Judgment (the "Gruber Decl.") (Doc. No. 58).  Tursi argues

that his deposition testimony and his wife's affidavit provide sufficient evidence of a non-trivial

defect.  Second, Tursi argues that his deposition testimony that he fell because his sandal got

caught underneath the saddle is sufficient to establish proximate causation.

In its Reply Memorandum of Law in Support of Defendant's Motion for Summary

Judgment ("Reply Memo") (Doc. No. 59), the Government ignores Jane's affidavit, and argues

that Tursi's deposition is insufficient to establish the existence of a non-trivial defect.  The

Government implies that Tursi's deposition testimony as to the cause of his fall is conclusory

and "after-the-fact speculation," which is insufficient to defeat the motion for summary judgment.  (Reply Memo at 9.)  The Government also argues – for the first time – that Tursi has not offered any evidence that the Government had notice of the allegedly dangerous condition. (*Id.* at 6–8.)

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant "bears the initial burden of demonstrating the absence of a genuine issue of material fact."  *SS Grocery, Inc. v. U.S. Dep't of Agric., Food & Nutrition Serv.*, 340 F. Supp. 3d 172, 179 (E.D.N.Y. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330–31 (1986)).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see Brady v. Town of Colchester*, 863 F.2d 205, 210–11 (2d Cir. 1988).

If the movant meets this burden, "the burden shifts to the nonmoving party to come forward with persuasive evidence that his claim is not 'implausible.'"  *Brady*, 863 F.2d at 211. "[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment."  *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (citing *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990)).  Rather, the non-movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R.

Civ. P. 56(c). Because courts are "required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought, . . . [t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citations omitted). A defendant is entitled to summary judgment where the plaintiff has "'failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim on which the plaintiff[ ] bear[s] the burden of proof." *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

## DISCUSSION

"The Federal Tort Claims Act removes the sovereign immunity of the United States from suits in tort, and, with certain exceptions, renders the Government liable in tort as a private individual would be under like circumstances." *Harper v. United States*, 949 F. Supp. 130, 132 (E.D.N.Y. 1996) (citing *Richards v. United States*, 369 U.S. 1, 6 (1962)). "The Government's liability under the FTCA is limited to 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citations omitted). Because the acts or omissions at issue in this case occurred in Brooklyn, New York law applies to Tursi's claims under the FTCA.

Generally, to establish a *prima facie* case of negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir.

2006) (quoting *Solomon ex rel. v. City of New York*, 499 N.Y.S.2d 392, 392 (N.Y. 1985)).  "To

show a breach of duty in a slip-and-fall case, the plaintiff must show that the defendant either

created the condition which caused the accident, or . . . had actual or constructive notice of the

condition."  *Davis v. United States*, No. 17-CV-400, 2019 WL 203108, at \*2 (E.D.N.Y. Jan. 15,

2019) (quoting *Seixas v. Target*, No. 15-CV-3851 (ERK), 2017 WL 2178425, at \*1 (E.D.N.Y.

May 16, 2017)).

### A. Trivial Defect

In New York, "a property owner may not be held liable for trivial defects, not

constituting a trap or a nuisance, over which a pedestrian might merely stumble, stub his or her

toes, or trip."  *Taussig v. Luxury Cars of Smithtown, Inc.*, 818 N.Y.S.2d 593, 594 (2d Dep't

2006) (citing *Hagood v. City of New York*, 785 N.Y.S.2d 924, 924 (2d Dep't 2004)).  In

determining whether a defect is trivial, the court must examine all facts presented, including the

"width, depth, elevation, irregularity and appearance of the defect along with the 'time, place,

and circumstance' of the injury."  *Trincere v. Cty. of Suffolk*, 665 N.Y.S.2d 615, 616 (N.Y. 1997)

(quoting *Caldwell v. Vill. of Island Park*, 304 N.Y. 268, 274 (1952)).

In *Trincere*, the New York Court of Appeals made it clear that a "mechanistic disposition

of a case based exclusively on the dimension of the sidewalk defect is unacceptable."  *Id.* at 616.

The Court of Appeals "cautioned that 'there is no "minimal dimension test" or *per se* rule that a

defect must be of a certain minimum height [or depth] in order to be actionable.'"  *Habecker v.

KFC U.S. Properties, Inc.*, 928 F. Supp. 2d 648, 654 (E.D.N.Y. 2013) (citing *Trincere*, 665

N.Y.S.2d at 616) (alterations in *Habecker*).  The *Trincere* Court "emphasized the fact-specific

nature of trip-and-fall claims in which liability is largely based on defects in premises," *id.* at 654

(citing *Trincere*, 665 N.Y.S.2d at 616), and that "each trip-and-fall case is fact-specific beyond

one or two factors." *Id.* at 655 (citing *Trincere*, 665 N.Y.S.2d at 616). The Court of Appeals noted that the issue of whether a dangerous or defective condition exists "depends on the particular facts of each case and is generally a question of fact for the jury." *Trincere*, 665 N.Y.S.2d at 616 (citing *Guerrieri v. Summa*, 598 N.Y.S.2d 4, 5 (2d Dep't 1993)).

In arguing that the defect alleged by Tursi is trivial, the Government points only to the portion of Tursi's deposition testimony in which he describes the defect as "an opening [of] maybe a quarter to a half inch." (Apicella Decl., Ex. B, at 94.) However, there is a genuine issue of material fact with respect to the size of the defect, because Jane estimates the gap was one to two inches wide. (Gruber Decl., Ex. D, at 1.) Moreover, even assuming Tursi's quarter-to-half-inch estimate was correct, the Court cannot hold that the defect was trivial based solely on the dimension of the defect. *See Trincere*, 665 N.Y.S.2d at 616.

## B. Proximate Cause

"To demonstrate proximate cause, a plaintiff must show that the injury was a natural and probable consequence of the conditions present." *Diaz v. Calabrese*, No. 13-CV-1531 (ARR) (MG), 2014 WL 6883517, at *11 (E.D.N.Y. Dec. 4, 2014) (citing *Gordon v. Am. Museum of Nat. History*, 501 N.Y.S.2d 646 (N.Y. 1986)). "Proximate cause may be established without direct evidence of causation by inference from the circumstances of the accident." *Bilska v. Truszkowski*, 98 N.Y.S.3d 110, 112 (2d Dep't 2019) (citing *Vojvodic v. City of New York*, 51 N.Y.S.3d 534, 535 (2d Dep't 2017)). "A plaintiff's inability to identify the cause of [his] fall is fatal to a claim of negligence in a slip-and-fall case because a finding that the defendant's negligence, if any, proximately caused the plaintiff's injuries would be based on speculation." *Trapani v. Yonkers Racing Corp.*, 1 N.Y.S.3d 299, 300 (2d Dep't 2015) (citing *DiLorenzo v. S.I.J. Realty Co., LLC*, 981 N.Y.S.2d 590, 590–91 (2d Dep't 2014)). However, a "plaintiff need

not identify precisely what caused him to fall." *DaSilva v. KS Realty, L.P.*, 30 N.Y.S.3d 85, 87 (1st Dep't 2016) (citing *Acunia v. N.Y.C. Dep't of Educ.*, 891 N.Y.S.2d 70, 71 (1st Dep't 2009)).

Drawing all reasonable inferences in favor of the non-moving party, Tursi has adduced evidence which, if credited by a jury, could be sufficient to establish proximate causation. Tursi did not merely speculate as to what caused him to fall. Rather, his testimony implied that he fell when his right sandal got caught under the saddle, in "an opening [of] maybe a quarter to half inch." (Apicella Decl., Ex. B, at 45, 94.) Further, he explained exactly how he fell, stating, "my shoe was still stuck in there. I couldn't get my foot out of the sandal . . . it was caught, the front in – the edging of the bottom, the sole was caught and went underneath and got stuck." (*Id.* at 44–45.) While Tursi admits that he did not see the defect before he fell, this testimony that he felt his sandal slip under the saddle, preventing him from raising his foot, was sufficient to permit a reasonable juror to conclude that this opening was the proximate cause of his fall.

The Government urges this Court to discredit Tursi's testimony on the grounds that his sandal could not possibly get caught in a "quarter to half inch" gap. However, this analysis implicitly discounts Jane's affidavit, in which she estimates the gap was one to two inches. The Court cannot resolve the genuine issue of material fact regarding the size of the gap. Furthermore, as the Government has not supplied the Court with any evidence regarding Tursi's sandal, the Court cannot find, as a matter of law, that such a gap was too small to accommodate the front of Tursi's sandal.

### C. Notice of Defect

Although the Government raises the issue of whether it had notice of the gap that allegedly caused Tursi to fall, it raises that argument for the first time in the Reply Memo. The Court cannot address this issue because Tursi has not had a chance to respond. To the extent the

Government wishes to raise this argument, they must request permission to file a second motion for summary judgment.

## CONCLUSION

For the reasons stated above, the Government's motion for summary judgment is denied. If the Government wishes to request permission to file a second motion for summary judgment, the pre-motion conference request shall be filed within 30 days of the date of this Memorandum and Order. If the Government elects not to file a pre-motion conference request, the Government shall confer with Tursi and the parties shall file a joint proposed scheduling order, proposing dates for the completion of the Joint Pre-Trial Order and the start of trial.

SO ORDERED.

Dated: Brooklyn, New York
    October 7, 2019                      *Roslynn R. Mauskopf*

                                   _____
                                     ROSLYNN R. MAUSKOPF
                                     United States District Judge